Good morning, Your Honors. May it please the Court, my name is Michael Garner. I represent Lindley Contours. At the outset, let me address two preliminary matters that the Court had raised. One is with respect to Mr. Cooper, who has filed for bankruptcy very recently. We have no problem with the proposition that the outcome of this appeal will not have any effect on him. We don't intend to pursue him and we will take what procedural steps we need to take, such as stipulating with Mr. Sharp that we will sever that claim and then just put it in abeyance. Well, as I understand the application of the bankruptcy law, he is entitled to an automatic stay of this proceeding. So there's nothing that the parties need to do at this point. What we need to do is to await a ruling from the bankruptcy court as to whether or not that automatic stay might be lifted at some point down the road, and at that point we can reassess where we are. But as far as the remaining parties are concerned, the case simply continues forward without it. That's – I agree, Your Honor. I mean, I think it's somewhat ironic, given the procedural history of this case and the confusion over who was a plaintiff at what time, and that we now have yet another party that is now in limbo because of some exterior force. Absolutely. But I don't think anything – I don't think the parties need to do anything at this point. The court simply has to decide what, if anything, we can do with regard to Mr. Cooper. Very well, Your Honor. What about the little more complicated issue of diversity? I've spoken with Mr. Sharpe, and he will address the Court fully on that. The good news is that there is complete diversity. The issue is that apparently in the petition for removal it was not spelled out. Mr. Sharpe will inform the Court there is a statute and there's case law in the Ninth Circuit pursuant to which a defective allegation of jurisdiction may be cured. And so it would be our – Is there a showing? Have you prepared a written showing? Mr. Sharpe, who is the – who knows who his parties are and where their residence is the one that's going to have to address that, we only have Mr. Lindley and his LLC, and it's only a – he's the only owner of it, and he's in Oregon. We don't know who the members of the – we don't know who the members of the defendants are in any written showing, which Mr. Sharpe would do. I believe he is prepared to – We'll deal with that with Mr. Sharpe very well. Moving on to the merits, Your Honors. This case presents a rare case of where we have an express waiver of the right to proceed in arbitration. And it's important to look at the record here because I think in the respondents' responding papers there was a bit of dancing about as to what had actually happened here. But the defendants moved to dismiss in the Missouri court for forum nonconvenience. That was a motion that they made against all of the plaintiffs in the Missouri court except for the Missouri resident plaintiffs. Mr. Lindley was a party to the action at that time. The motion to dismiss proceeded against all of the plaintiffs. It refers to 64 plaintiffs, 62 of which were nonresident, and Mr. Lindley was one of those 62. They do not say this is a motion to dismiss for forum nonconvenience against all nonresident plaintiffs against Mr. Lindley. So the motion went against Lindley-Contours. He had not been dismissed from the case at that time. His motion to amend his petition had been denied. So he still had a petition in there, and he was or I say he, I mean Lindley-Contours. He was in the case, and the motion says it is unfair for the plaintiffs. This is the defendant speaking, to ask this court to glean the public policies of the various states whose laws are potentially implicated by this case in order to evaluate and assess the claims of each individual plaintiff. This is particularly true when considering that the nonresident plaintiffs, including Lindley-Contours, each have an available forum in which to present their claims, namely the state and or federal courts located in the state of the residence for each of the plaintiffs. But I think we're all familiar with that. So even if we were to say that that, in an ordinary case, may constitute a waiver of arbitration, what about when you file in Oregon and now you include all these other defendants? Doesn't that change from the perspective of the defendant, the calculus of whether to seek arbitration or not? Because now the case is a lot more complicated. More defendants are going to have to pay for representation for all these defendants. And plus you added some claims. You added Oregon franchise law claims. Okay.  Item number one, there's a unfortunate slip of time here. And if the what was concurrently pending or what had just been decided in the Missouri court is that the other plaintiff's third amended petition had been granted. And that was one that didn't include Mr. Lindley because Mr. Fortman, his prior lawyer, and I weren't on the same wavelength. And that included state law claims. And I think it's fair to say that if Lindley had been included in that petition, his Oregon state law claims would have been included. As to the parties that were added, there are kind of two categories of parties. But they all came in under one theory. And the one theory that they came in under was the Oregon franchise statute creates liability for so-called control persons that may include officers, directors, or persons such as the parent corporations, the pilot group here, that control the franchisor by way of stock ownership. Of course, the purpose of that, the Oregon franchise law is a statute that protects franchisees from fraudulent disclosures. And the concept of control person liability, as under the federal security statutes, is you don't want a franchisor that is a shell corporation defrauding people, walking away and having the control persons take the money bags out the back door. So that's the theory for control person liability. Those are not, in this case, an agent of the franchisor. They come in under statutory liability. The arbitration clause in this case, interestingly, talks about the franchisor and talks about the franchisee. But unlike many others that I've seen, it doesn't say the franchisor and all its agents, employees, representatives, et cetera. It says the franchisor. So it does not contemplate the inclusion of agents or employees in there. So our first position is, number one, these folks don't have a right to arbitrate. They're not named in the arbitration provision. And you don't get to them, ipso facto, simply because they are control persons. You can't readily- But the whole basis for control person liability is a recognition in the securities laws that it is the control persons who actually act and cause the corporation to do things. And in this case, it is the corporation or the LLCs or however they were organized that you allege breached the franchise law. And they can't act except through their control person. So why should we not find under, I don't know if it's a third-party beneficiary theory or what it would be characterized as, that although they didn't individually sign the franchise agreements, they may nonetheless claim to enforce the arbitration clause in it. Well, then we get to the other branch of our argument, or I should say perhaps the other side of that two-edged sword, which is if that corporation, Contours Express, can only act through its agent, the relevant action that is taken here is the express waiver that has been made. And so that express waiver- You talk about express waiver. What was express about it? They certainly participated in litigation, but unless you can establish prejudice, I'm just wondering what was expressed about it. It's not just litigation. It is the express waiver of making a motion for forum nonconvenience to dismiss. And saying- And that constitutes the express waiver in your view? And saying that this plaintiff has an available forum in which to present its claims. And then going on to say in a footnote, to the extent the plaintiffs contend that a dismissal will result in claims barred by the statute of limitations, the defendants will agree to waive their right to assert the statute of limitations defense. Right. Lindley Contours did precisely, precisely what Contours Express asked for in this motion. But that is an express waiver of a procedural bar that would prevent the action from being refiled in Oregon. That's not a waiver with regard to any other defenses that might be asserted to such an action, is it? Well, I think that when they invite us to come back to Oregon to litigate these claims in state court and say that they will waive a statute of limitations defense, and we in fact do that, and then they come in and say that this case should be dismissed. But you could raise the statute of limitation bar to a demand for arbitration, could you not? Well, we could, but it's clear on this record that if we are in state court, the waiver of the statute of limitations has been made. Well, the problem I'm having following your argument is I agree with you. I think there was an express waiver of the statute of limitation defense, but I don't see how that transforms into an express waiver of other defenses or remedies, I guess, if you will. Or in particular, the arbitration clause. Well, I think that with two years of litigation here, motions on the merits, motions not on the merits, that we do. So you're saying it's an implied waiver? There's an implied waiver as well as the express waiver. Okay, well, putting that aside for a moment, don't you still have to show prejudice? Absolutely. So where's the prejudice as the Court of Appeals for the Ninth Circuit has recognized it? This Court recognized in the Hoffman case that staleness of the claims, Hoffman against active erectors alone can constitute prejudice. But that goes back to the waiver of the statute of limitation defense. Staleness is what the statute of limitation protects. Well, staleness is not just the statute of limitations defense. Staleness is Mr. Cooper filing for bankruptcy. Staleness is witnesses forgetting what happened. But that's all embodied in a statute of limitation claim. And there's no problem with that based on the waiver. So what else have you got to show? What's the actual prejudice? I know it could be this, it could be that. But what's the actual prejudice? How has staleness really affected you? Or any other? What is the actual prejudice? Because you have to show prejudice for the waiver. In very real terms, as we've mentioned in the papers, there's been discovery that has taken place in the Missouri action that otherwise would not have taken place. But how does that prejudice do? I mean, did they get something there that they now can use in the arbitration that would really prejudice your case? Or is it just they got something that they wouldn't ordinarily get but, frankly, were not prejudiced? They got something that they wouldn't ordinarily have gotten. But you still have to show prejudice from that. They got something they shouldn't have gotten. And here's how it hurts our case. And I can't tell you that we would have done it this way or that way in arbitration as opposed to it. But if we start out in a case in court, we've got one deck of cards. If we start out in arbitration, we've got another. But we're talking about 268 documents, right? 268 documents. Are they documents or pages? They're pages. Okay, so pages. That could be one document. Yeah, exactly. I mean, okay. Granted, you don't have a general entitlement to discovery in arbitration, but there are circumstances in which the arbitrator can order the parties to exchange. From time to time. But that's something that we could resist in arbitration, and I've resisted in another arbitration. But you don't have any of the 238 pages, and there was a deposition, but it wasn't Lindley. A couple of depositions, but not Lindley. Is there anything that somehow prejudiced your case, made it more difficult? Not specifically. But don't you have to show it? I do come back to staleness. I have a client who's in his 70s, time flies. And justice delayed is justice denied. Right, but won't it go faster in arbitration anyway? That's the whole idea. It does, and sometimes it doesn't. Thank you, counsel. Your time has expired. Thank you. We'll hear from Mr. Sharp on behalf of AABB Fitness. May it please the Court, Darren Sharp on behalf of the Appalese. Let me first address the diversity issue. I think the Court has asked questions of Mr. Garner about that. Pursuant to 28 U.S.C. Section 1653, jurisdictional allegations which are deemed effective may be amended, both at the trial court as well as in the appellate court. Pursuant to that statute, I believe that the defective allegations regarding diversity of citizenship can be amended in this court while the appeal is being heard by the Ninth Circuit. I gather there's no showing. You've made no written submission with respect to that. Not at this point, Your Honor. And the reason why I've not done that is there was an order issued asking the parties to show up and be able to discuss at oral argument diversity. And so I didn't want to presume to know what the Court was thinking and file something before the oral argument. So what do you file? Do you file a joint stipulation? Does that do it? Well, there are two cases I'd cite, Manton v. Broadcast Music, 248 F. 2nd at 530. That's a Ninth Circuit case from 1957. And in that case, what happened was after oral argument, the Court realized there were defective allegations regarding diversity of citizenship and then, at that point, raised the issue with the parties and the parties amended after oral argument the complaint in the Ninth Circuit, actually, to cure those allegations that were defective. Okay. I'll also refer you to the Barrow v. Fulton Insurance case, 418 F. 2nd at 316. It's a Ninth Circuit case from 1969. That's probably more on point for what we have here. It was a notice of removal, which was deemed defective, because it didn't allege the principled place of business of a corporate entity, as well as where it was incorporated, dual citizenship for the corporation. So at that point, the Ninth Circuit raised the issue, and in the Court of Appeals, the parties amended the notice of removal. And so I would propose, and having discussed it with Mr. Garner, the court allow the appellees to file, whether it's ten days or whatever the court wishes, after oral argument to file an amended notice of removal, or we could file a motion for leave asking the court to allow us to then file an amended notice of removal. That would cure the jurisdictional allegations. What do you got? We're talking about Pilots Group LP, Contours Express LLC, and Pilot Group LLC. Having discussed it with my client, I believe we have complete diversity. I deal with this all the time. It gets into so many levels, because you take Pilot Group LP or any of these LLCs, you find out that there's an LLC that's a member, and then you have to get into the memberships of the LLC. You may think you have it, but let's find out. Show your cards. At this point in time, the only cards I have to show you is based on a conversation I've had with my Oregon citizens or Oregon entities. The LLC that's on the other side is an Oregon LLC. Mr. Lindley is an Oregon citizenship. Right, but he represented that Lindley is the only owner of that LLC. Correct. So like Pilot Group LP, who are the owners of Pilot Group LP? My understanding is there are several entities as well as partners, and it's my understanding they are not Oregon citizens. Are any of them LLPs or LLCs? There may be, Your Honor. So who are the owners of those? Do you see the problem? I see the problem. Again, I can only tell you based on my conversations that I have with my client. If ultimately, if the court is going to allow us 10 days, 30 days, whatever to file an amended notice and that amended or, excuse me, the amended notice removal, and ultimately if we can't prove it, then we may have an issue. But I believe we can prove it. What I'm concerned with is that what happens here isn't what happens before me routinely. That is, they submit Pilot Group LLP is owned, the members are, and another one of them is an LP or an LLC, and they don't tell me who the members of that one are. And so we then have to then send it back again. Your Honor, I believe I did ask my clients with respect to the partners of the limited partnership, are there other partners? And I believe the answer was yes. And I followed up and said, are any of those other partners Oregon citizens? They said no. So all I can tell you is based on what I know at this point in time, I don't believe we're going to have issues with respect to entities or partnerships. You have to get to the bottom of every LLC, and if it's owned by an LLC, who those owners are. And if one of them is an LLC, who those owners are. You have to get to the very bottom where you're down to individuals. Or corporate entities. I mean, it seems to me the way we might address it is to simply remand it to And assuming that you're ultimately able to convince the district court that there is complete diversity here, then you're fine. And at the same time, then you can move for leave to amend your notice of removal to satisfy the court's jurisdiction. That's one way to handle it. I think the party's preference would be to amend the notice of removal in a court of appeals, which is allowed pursuant to the cases I've cited. The problem I've got, though, is that the district court at this point will think it has no jurisdiction to do anything because your filing of the notice of appeal deprives the district court of jurisdiction to take any further action in the case unless we issue a limited remand and tell the district court to do something. Did I understand that you thought you could amend the notice of removal now? Yes. In this court? In the Ninth Circuit. I believe 28 U.S.C. Section 1653, and I'm reading it here, Your Honor. I think we find this a little unusual, to say the least. It is unusual. I've never had it. You're saying the Barrows case from 1969 is authority to allow. That's right, as well as this. I'll read you the statute. It's a one-sentence statute, Section 1653. Defective allegations of jurisdiction may be amended upon terms in the trial or appellate courts. And it surprised me as well, Your Honor. And looking at the two cases, I – Is the notice of removal even in the record before us? Yes, it is. Okay. It is in the record. I can – I don't have that site in front of me. That's okay. That I think we can sort out. And so I guess the parties would prefer to get it taken care of in this court. I can't answer your questions, Your Honor, other than to tell you, based on my conversations with my clients, that there are no Oregon partners and members. Now, if we drill down as far as we can go and find that there are Oregon citizens, we may have a different story. But, again, it's my understanding there is not, that there is complete diversity. And so I would ask the court to allow us to, whether the court wants us to file a motion for leave to amend in this court or simply if I can move orally and ask for leave to amend and then file our amended notice of removal within 10 days after oral argument. Whatever the court wishes, I think those are the terms that Section 1653 is referring to. Very well. We will entertain that suggestion and probably by supplemental order suggest something. If we can turn to the merits. Absolutely. If you are truly desirous of going to arbitration, why did you file a motion to dismiss rather than a motion to compel arbitration? And in the absence of the more specific, have you truly asserted your contractual right? Well, pursuant to the Sparling v. Hoffman construction case, it's a Ninth Circuit case, if all claims are subject to arbitration, the entire case may be dismissed. And that's what we've done. We filed a motion to dismiss all claims. And that's what the magistrate judge and, of course, the district court judge who adopted the findings also agreed with that ruling. And so, therefore, having all claims dismissed subject to arbitration, it's really up to the other side who wants to pursue the claim to seek arbitration. But now we're back to the same problem that I was talking with Mr. Garner about, and that is how do we characterize the new individual defendants? And are they even bound by the arbitration? Absolutely. Under the Letizia case, which we cited in the brief, the Ninth Circuit has made clear that non-signatories to a franchise agreement can enforce those arbitration clauses. And it's really for public policy reasons. Number one, if you're so closely aligned with the entity and that your interests are aligned, you should be able to also enforce that arbitration clause. For reasons you had asked, Mr. Garner, a corporation or an entity only acts through individuals, through its people. And so a person could avoid an arbitration clause that's been signed on behalf of a corporate entity just by simply alleging another individual and say, well, that individual didn't sign this agreement, therefore we don't have to arbitrate. There's such a strong federal public policy to enforce arbitration clauses that to rule otherwise would allow someone to creatively plead around arbitration, which would really disrupt federal arbitration. Well, it might result in a situation where part of the case goes to arbitration and part of the case has to be tried in front of a judge. But the Supreme Court has specifically recognized that piecemeal litigation may in some circumstances be the inevitable result. Absolutely. But in this case, all the claims are subject to the arbitration clause. And if they're all subject to the arbitration clause, there's not going to be piecemeal litigation. And in fact, by saying that some signatories can enforce it but not the non-signatories, you'd really be creating piecemeal litigation. You'd have litigation with respect to the non-signatories but arbitration with respect to the signatories. And I think the Ninth Circuit made clear in the Letizia case, in that case we had a disgruntled investor who sued the brokerage house as well as the employees of the brokerage house. And the argument was exactly as what's raised by Lindley Contours here. The employees didn't sign the arbitration clause, therefore they can't enforce it. And the Ninth Circuit said no, their interests are so closely aligned, they're acting as agents, therefore they are entitled to enforce it. If we were to agree with you on that, why shouldn't we find nevertheless that there was a waiver as to AAV fitness holdings? And I think that's what Judge Talman is talking about. The cases would be split. The individuals would have arbitration and the corporate defendant would have a bench trial. A couple of reasons, Your Honor. Number one, to find waiver under the Ninth Circuit, as the court noted, you have to have prejudice. We don't believe there was any prejudice that resulted from the litigation that occurred in Missouri with respect to AABB and Contours Express for a couple of reasons. Number one, there were only two claims pending, a breach of contract and fraud in the inducement. We've got four new claims here that required a whole new slew of discovery and legal claims. On top of that, there was no prejudice. And this goes back to the original argument made by Lindley Contours. Back in Missouri, when the motion to dismiss for form nonconvenience was filed, Lindley Contours and Norman Lindley were not parties in that lawsuit. They had two competing motions to amend to file amended complaints or petitions. The Missouri court recognized she could not grant both motions and have two competing petitions. She denied Lindley Contours' motion to amend. She granted the remaining plaintiff's motion to amend. If you look at the third amended petition that was the operative complaint when we filed our motion to dismiss for form nonconvenience, Lindley Contours is not a party. But then where is Lindley Contours? They can't file their own petition. They're not included in the other petition. Or they'd have to just file a separate action. Exactly. And I think the court in Missouri recognized that. If you look in the record on page 289, that's the Missouri court's order, she addresses the fact that there are other remedies for Mr. Lindley if he doesn't feel like his claim is being represented. It clearly wasn't. He wasn't a named party. But didn't he do that when he initiated the Oregon litigation? He filed his separate action. He did, but it's subject to the arbitration clause, which we were allowed to enforce when he added 12 new parties and four new legal claims. So his claims are still alive. He can still arbitrate them. We haven't done anything to touch on the merits of his claims. He can still vindicate his rights if he so chooses. He can do so in arbitration. Why aren't we going to end up in the piecemeal situation? I'm still having a hard time figuring out, now that we have individual defendants that are not signatories. And for the sake of my question, I'm not buying your argument that they're all one and the same. So we would end up in the situation that Judge Moskowitz suggested where we'd have a bench trial as to the corporate entity or, excuse me, arbitration as to the corporate entity or dismissal, I guess, and the litigation proceeds as against the individuals. I don't think that there is piecemeal litigation based on the Letizia case in the Ninth Circuit as well as the other cases cited from other circuits in the brief, the Grizzle case from the Eighth Circuit. How do you distinguish Dean Witter, then, where the Supreme Court said, you know, you can carve out the securities law claims and those cannot be compelled to arbitration? Well, I think in this case, if you read, go back to the arbitration clause. The arbitration clause in the franchise agreement says, arising under or in connection with the agreement. They're being sued, these individuals and companies, are being sued as control persons under Oregon franchise law. As control persons, that inherently means that you are acting on behalf of the company and doing something on behalf of the company, the franchise company. Therefore, your alleged actions are arising under or in connection with the agreement. So I think they all are subject to arbitration. In fact, you'd only create piecemeal litigation if you're going to find that the individuals as non-signatories can't enforce it, but the company can. And in fact, it's completely opposite of what the federal arbitration law and public policy has developed in the federal courts want. They want, as much as they can, to enforce arbitration clauses and favor arbitration. And so, again, I go back to the Letizia case in the Ninth Circuit. That's the case that says non-signatories can enforce arbitration agreements. The Micor case is a Ninth Circuit case as well. And so I see my time is up. If there are any other questions for the court, I thank you for your time. Counsel, your time has expired. Before you leave the court, would you please get a form from the deputy clerk to post those additional citations that you gave us during your oral argument? With respect to the removal? Yes, because we don't have those, do we, in the record? You do not. I apologize, but I will certainly do that. Three copies for the bench, one copy for opposing counsel. Thank you. Thank you. The case just argued will be submitted for decision, and the court will adjourn.
judges: Moskowitz, O'scannlain, Tallman